**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | **)** | Chapter 7 |
| | **)** | Case No. 11-18133 |
| P&P REALTY, INC., d/b/a RE/MAX | **)** | |
| TEAM 2000, | **)** | Hon. Carol A. Doyle |
| | **)** | |
| Debtor. | **)** | **Hearing Date: October 9, 2013** |
| | **)** | **Hearing Time: 10:30 a.m.** |

**SECOND AND FINAL APPLICATION OF KEN NOVAK & ASSOCIATES, INC., FOR**
**ALLOWANCE OF ADMINISTRATIVE CLAIM FOR COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES FOR THE**
**PERIOD JULY 31, 2011 THROUGH JUNE 25, 2013**

Ken Novak & Associates, Inc. ("KNA"), collection agent and liquidation consultant, to

N. Neville Reid, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee")

for the bankruptcy estate (the "Estate") of P&P Realty, Inc., d/b/a RE/MAX Team 2000 (the

"Debtor"), by and through general bankruptcy counsel for the Trustee, files this application

("Application") for allowance and interim payment of an administrative claim in the amount of

$209,085.95, consisting of $201,726.18 in fees and $7,359.77 in expenses, for the period of July

31, 2011 through June 25, 2013 (the "Application Period").  In support of this Application, KNA

states the following:

**INTRODUCTION**

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. § 1334.

This matter is a core proceeding within the meaning of § 157(b).  Venue is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

2.      The bases for the requested relief are Sections 328, 330, and 331 of Title 11 of the

United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 5082-1 of the Local Rules of the United States

Bankruptcy Court for the Northern District of Illinois (the "Local Rules").

## BACKGROUND

3.      On April 28, 2011 (the "Petition Date"), the Debtor (the "Debtor") filed a

voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States

Bankruptcy Court for the Northern District of Illinois (the "Court").   Shortly thereafter, N.

Neville Reid was appointed as chapter 7 trustee (the "Trustee") for the Debtor's bankruptcy

estate.

4.      On May 10, 2011, the Court entered a final order granting the Trustee's

application to retain KNA as Collection Agent and Liquidation Consultant, retroactive to April

28, 2011.  [Dkt. 14.]

5.      On August 11, 2011, the Court entered an Order allowing the First Interim

Application of Ken Novak & Associates, Inc. for Allowance of Administrative Claim for

Compensation and Reimbursement of Expenses for the Period April 28, 2011 through July 30,

2011 (the "First Compensation Application"). [Dkt. 91.]

## REQUESTED RELIEF

6.      KNA files this Application to be allowed an administrative claim for its unpaid

fees and expenses for work performed on behalf of the Trustee during the Application Period.

7.      Attached as Exhibit A to this Application are the detailed billing records of KNA.

8.      Attached as Exhibit B to this Application is a summary out-of-pocket expenses

incurred by KNA.

## PROFESSIONAL SERVICES RENDERED

9.      At the inception of this bankruptcy case, the Trustee took charge of a chaotic and

highly distressed residential and commercial real estate business – one of the largest in the

Chicago area.  The Debtor had numerous outstanding closings (many of which had not yet been

scheduled by the Debtor's management) and over 100 anxious agents for much of the early to

mid-stages of the case. The Trustee required frequent and extensive assistance from KNA to

ascertain and answer a myriad of often complex business issues relevant to his efforts to stabilize

that business, deal with very concerned agents and structure rules and procedures consistent with

bankruptcy law that effected closings, reduced the risk of circumvention of the Estate by certain

agents and provided a sound basis for making some payments to the Debtor's former agents for

post-petition closings.  As an operating chapter 7 (through March 31, 2012), the case paralleled

the initial and mid-stages of an operating chapter 11, with much rapid and necessary activity to

put the case on the proper legal track.   In each of the stages of the case, KNA's financial

analysis and business acumen was crucial for creating the benefits to the estate discussed below.

10.      Overall, the combined efforts of KNA, the Trustee and his counsel facilitated the

smooth  completion  of  the  outstanding  closings[1]  that  generated  roughly  $1.1  million  in

commission proceeds for the Estate post-petition, roughly $57,000 of which were recovered from

agents who attempted to divert commissions from the estate.  In addition,  KNA's diligence in

working with the Trustee and his counsel enabled the Trustee to recover roughly $85,000 in

general receivables. By March 2013, after contentious and lengthy discovery and settlement

negotiations, the Trustee had also obtained a favorable settlement for the estate with one of the

---

[1]      A small number of closings were cancelled by mutual consent of the buyer and seller.

Debtor's principal agents that resulted in substantial commissions[2] previously claimed by such agent as its exclusive property being released to the general estate for distributions. KNA was intimately involved in the discovery and strategizing that made such a favorable settlement possible.

11.      Finally, when feasible the Trustee made distributions to the estate's secured creditor (First Midwest Bank) and the Debtor's agents who cooperated with the estate's closing efforts by becoming "approved agents" (structured as an administrative claim in the amount of 35% of the gross commission amounts related to such agent's closings; see agent retention program described in and approved by the pleadings set forth in Dkts. 61 and 92) in the amounts of $191,496.98 (consisting of two payments in June and October of 2011, respectively) and $267,852 (between December 2011 and October 2012), respectively, in accordance with the 506(c) stipulation previously entered in this case. [Dkt. 93] (the "Stipulation"). Upon approval of this final report, the Trustee will make an additional distribution of $45,301.20 to the successor secured lender in this case (Cohen Financial, as assignee of First Midwest Bank; collectively, the "Secured Lender"), as a priority claim ahead of the agents (per the Stipulation), which will bring total distributions to the secured lender and agents in the case to $504,650.19. None of these benefits for the estate, its creditors and the agents would have been possible without KNA's persistence, diligence, investigative and analytical skills, organization and extensive work in each of the areas described below.

12.      During the Application Period, KNA performed a multitude of services on behalf of the Trustee, specifically; time records have been divided into nineteen (19) uniform

---

[2]      The actual dollar amount of commissions retained by the estate per the settlement is not revealed here since the settlement agreement and motion related thereto were filed under seal in this case. However, such commissions retained by the estate were substantially in excess of the costs shown related to the Kennedy matter.

categories. The following chart sets forth those uniform categories, the total hours of legal

services attributable to each category, and the total compensation for which KNA seeks payment

with respect to each category:

| TASK CODE | CATEGORY | TOTAL FEES INCURRED |
|---|---|---|
| A | Accounting | $9,964.15 |
| AA | Agent Packets | $46,772.68 |
| AD | Administrative | $5,008.95 |
| AR | Non-Agent Accounts Receivables | $855.20 |
| E | Escrow Earnest Monies | $13,393.00 |
| EA | Estate Administration | $594.50 |
| FM | Distribution to First Midwest Bank | $87.50 |
| IM | Review and Process Incoming Mail | $1,209.60 |
| K | Kennedy, et. al. matters | $37,741.45 |
| MO | Monthly Operating Reports | $9,852.70 |
| OP | Closing of Real Estate Contracts | $20,134.25 |
| P | Projections | $10,876.30 |
| PC | Potential Circumventions | $12,000.75 |
| PL | Conference Calls and Meetings | $7,120.28 |
| PR | Preferences | $2,662.50 |
| RP | ReMax Agent Retention Program | $11,242.13 |
| RS | Review of Debtor's Records | $2,741.70 |
| T | Work on Various Payroll and Other Taxes in Related Matters | $8,000.55 |
| TH | Resolve Threat to KNA Employee | $1,468.00 |

Detailed, itemized statements of the legal services rendered by KNA to the Trustee are attached to this Application as Exhibit A.

## DESCRIPTION OF SERVICES RENDERED BY KNA BY CATEGORY

13.     The following is a detailed description of the services rendered by KNA in connection with each of the uniform categories.  Each description includes a chart summarizing who performed the services attributable to that category, the number of hours of services rendered, each person's billing rate and the total fees incurred in connection with the services provided by that person and for the category as a whole.

### A.  ACCOUNTING

14.     During the Application Period, KNA provided the Trustee with accounting services, for which KNA seeks allowance of $9,964.15 in fees. These accounting services include, but are not limited to, working on the Debtor's multiple accounting systems and facilitating the Trustee's tax accountant's preparation of corporate federal and state income/replacement tax returns.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 11.7[3] | $175.00 | $2,047.50 |
| Janice Seyedin | 11.7[4] | $109.00 | $1,275.30 |
| Cheryl Giddens | 60.75[5] | $109.00 | $6,621.75 |
| Natalie Scherbaum | 0.4 | $49.00 | $19.60 |
| TOTAL | 104.8 | | $9,964.15 |

### B.  AGENT PACKAGES

---

[3] Actual time spent was 12.6 hours, however as an accommodation to the Estate KNA has agreed to write-off certain fees which provided a savings of $157.50 to the Estate.

[4] Actual time spent was 35.4 hours, however as an accommodation to the Estate KNA has agreed to write-off certain fees which provided a savings of $2,583.30 to the Estate.

[5] Actual time spent was 81.0 hours, however as an accommodation to the Estate KNA has agreed to reduce  these fees by 25% which provided a savings of $8,829.00 to the Estate.

6

15.     During the Application Period, KNA worked on sending out, reviewing responses, analyzing returned information provided (or not provided), organizing files regarding Agent Packets so former agents could be recommended for "Approved Agent" or non-approved agent status, for which KNA seeks allowance of $46,772.68 in fees.  KNA's work in this area helped the Trustee ensure that agents were not overcompensated and maintained the integrity of the agent retention program approved by the court.

|  | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 64.5 | $175.00 | $11,287.50 |
| Janice Seyedin | 239.0 | $109.00 | $26,051.00 |
| Cheryl Giddens | 0.375[6] | $109.00 | $40.88 |
| Natalie Scherbaum | 191.7 | $49.00 | $9,393.30 |
| TOTAL | 495.7 | | $46,772.68 |

## C.  ADMINISTRATIVE

16.     During the Application Period, KNA worked general administrative and billing related matters, for which KNA seeks allowance of $5,008.95 in fees.

|  | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 14.5 | $175.00 | $2,537.50 |
| Janice Seyedin | 9.5 | $109.00 | $1,035.50 |
| Cheryl Giddens | 2.25[7] | $109.00 | $245.25 |
| Natalie Scherbaum | 24.3 | $49.00 | $1,190.70 |
| TOTAL | 50.55 | | $5,008.95 |

## D.  NON-AGENT ACCOUNT RECEIVABLES

---

[6] Actual time spent was 0.5 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $13.62 to the Estate.
[7] Actual time spent was 3.0 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $81.75 to the Estate.

17.     During the Application Period, KNA worked on non-agent receivables, for which KNA seeks allowance of $855.20 in fees.

|  | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 4.7 | $175.00 | $822.50 |
| Cheryl Giddens | 0.3[8] | $109.00 | $32.70 |
| **TOTAL** | **5.0** | | **$855.20** |

## E.   ESCROW EARNEST MONIES

18.     As of the petition date, the Debtor held over $400,000 in monies designated as "escrow funds", representing funds allegedly owed to third parties from transactions that had not yet closed.   As closings occurred post-petition (or were cancelled by consent of the parties), KNA carefully tracked the escrow monies that needed to be released to the estate (as commissions) or to third parties.   In addition, upon closer examination,  KNA determined that some of the "escrow" funds should be property of the estate because they related to pre-petition transactions that actually had closed and that, therefore, had generated commissions that contractually belonged to the Debtor.  Due to KNA's efforts, roughly  $17,000 was released from escrow into general estate funds. KNA helped the Trustee determine the amount of escrow funds that needed to be returned to the State of Illinois as unclaimed funds and prepared appropriate paperwork for such transfer.

19.     During the Application Period, KNA seeks allowance of $13,393 in fees for its overall work in investigating the proper disposition of escrow funds.

|  | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 24.8 | $175.00 | $4,340.00 |

---

[8] Actual time spent was 0.4 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $10.90 to the Estate.

8

| | | | |
|---|---|---|---|
| Janice Seyedin | 45.3 | $109.00 | $4,937.70 |
| Cheryl Giddens | 20.7[9] | $109.00 | $2,256.30 |
| Natalie Scherbaum | 0.5 | $49.00 | $24.50 |
| Margaret Novak | 25.2 | $29.00 | $730.80 |
| Christopher Miller | 28.3 | $39.00 | $1,103.70 |
| **TOTAL** | **144.8** | | **$13,393.00** |

## F.  ESTATE ADMINISTRATION

20.    During the Application Period, KNA provided general estate administration

services, for which it seeks allowance of $594.50 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 0.9 | $175.00 | $157.50 |
| Janice Seyedin | 2.9 | $109.00 | $316.10 |
| Cheryl Giddens | 0.3[10] | $109.00 | $32.70 |
| Natalie Scherbaum | 1.8 | $49.00 | $88.20 |
| **TOTAL** | **5.9** | | **$594.50** |

## G.  FIRST MIDWEST BANK

21.    During the Application Period, KNA worked on calculations necessary for the

distribution to First Midwest Bank, for which KNA seeks allowance of $87.50 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 0.5 | $175.00 | $87.50 |
| **TOTAL** | **0.5** | | **$87.50** |

## H.  PROCESS INCOMING MAIL

22.    During the Application Period, KNA reviewed and processed all incoming mail

from the U.S. Postal Office, for which KNA seeks allowance of $1,209.60 in fees.

---

[9] Actual time spent was 27.6 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $784.80 to the Estate.
[10] Actual time spent was 0.4 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $10.90 to the Estate.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 4.0 | $175.00 | $700.00 |
| Natalie Scherbaum | 10.4 | $49.00 | $509.60 |
| **TOTAL** | **14.4** | | **$1,209.60** |

## I.  KENNEDY

23.    During the Application Period, KNA worked extensively on the investigation and analysis of amounts due from and to James Kennedy et. al., and its affiliate JPK Capital Inc. (collectively, "Kennedy"). KNA also worked on the Objection by Kennedy to the Trustee's agent retention program.  Overall, KNA seeks allowance of $37,741.45 in fees for Kennedy-related matters.  KNA's extensive work on the Kennedy matter was essential for enabling the Trustee to settle the Kennedy claim on terms favorable to the estate, including the release into the estate of commissions substantially in excess of the costs incurred in negotiating the settlement.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 56.2[11] | $175.00 | $9,835.00 |
| Janice Seyedin | 237.8 | $109.00 | $25,920.20 |
| Cheryl Giddens | 1.05[12] | $109.00 | $114.45 |
| Natalie Scherbaum | 38.2 | $49.00 | $1,871.80 |
| **TOTAL** | **333.25** | | **$37,741.45** |

## J.  MONTHLY OPERATING REPORTS

24.    During the Application Period, KNA worked on the Trustee's Monthly Operating Reports and related for the period 04/28/11 through 03/31/12 (the period the court allowed the

---

[11] Actual time spent was 121.7 hours, however as an accommodation to the Estate KNA has agreed to write-off certain fees which provided a savings of $11,462.50 to the Estate.

[12] Actual time spent was 1.4 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $38.15 to the Estate.

Trustee to "operate" the Debtor's business for purposes of closing the existing pre-petition residential and commercial property sale / purchase contracts), for which KNA seeks allowance of $9,852.70 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 6.4 | $175.00 | $1,120.00 |
| Janice Seyedin | 8.9 | $109.00 | $970.10 |
| Cheryl Giddens | 67.8[13] | $109.00 | $7,390.20 |
| Natalie Scherbaum | 7.6 | $49.00 | $372.40 |
| **TOTAL** | **90.7** | | **$9,852.70** |

### K.  CLOSING OF REAL ESTATE CONTRACTS

25.     During the Application Period, KNA processed former agents' closings of real estate contracts and related work, for which KNA seeks allowance of $20,134.25 in fees.  KNA's work on closings helped to generate and protect $1.1 million in post-petition closing proceeds.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 19.8 | $175.00 | $3,465.00 |
| Janice Seyedin | 146.2 | $109.00 | $15,935.80 |
| Cheryl Giddens | 0.75[14] | $109.00 | $81.75 |
| Natalie Scherbaum | 13.3 | $49.00 | $651.70 |
| **TOTAL** | **180.05** | | **$20,134.25** |

### L.  PROJECTIONS

26.     During the Application Period, KNA worked on various bankruptcy estate financial projections upon the request of the Trustee, to enable the Trustee to answer creditor inquiries, determine the potential recoveries from closings and other potential assets and to

---

[13] Actual time spent was 90.4 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $2,463.40 to the Estate.

[14] Actual time spent was 1.0 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $27.25 to the Estate.

monitor administrative costs of the estate, for which KNA seeks allowance of $10,876.30 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 36.8 | $175.00 | $6,440.00 |
| Janice Seyedin | 33.5 | $109.00 | $3,651.50 |
| Cheryl Giddens | 7.2[15] | $109.00 | $784.80 |
| **TOTAL** | **77.5** | | **$10,876.30** |

## M. POTENTIAL CIRCUMVENTION

27.     During the Application Period, KNA investigated potential circumventions wherein the Estate did not receive the sales commissions or management fees the Trustee believed were owed for residential and commercial property sale-purchase transactions. This work included subpoena preparation assistance and subpoena response analysis and related work, for which KNA seeks allowance of $12,000.75 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 21.8 | $175.00 | $3,815.00 |
| Janice Seyedin | 64.4 | $109.00 | $7,019.60 |
| Cheryl Giddens | 0.45[16] | $109.00 | $49.05 |
| Natalie Scherbaum | 10.7 | $49.00 | $524.30 |
| Christopher Miller | 15.2 | $39.00 | $592.80 |
| **TOTAL** | **112.55** | | **$12,000.75** |

## N. CONFERENCE CALLS AND MEETINGS

28.     During the Application Period, KNA attended various conference calls and meetings to discuss status, work priorities, planning, strategies, the Trustee's directives and one-topic specific issues, for which KNA seeks allowance of $7,120.28 in fees.

---

[15] Actual time spent was 1.0 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $261.60 to the Estate.

[16] Actual time spent was 0.6 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $16.35 to the Estate.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 19.1 | $175.00 | $3,342.50 |
| Janice Seyedin | 19.0 | $109.00 | $2,071.00 |
| Cheryl Giddens | 14.175[17] | $109.00 | $1,545.08 |
| Natalie Scherbaum | 3.3 | $49.00 | $161.70 |
| **TOTAL** | **55.575** | | **7,120.28** |

## O.  PREFERENCES

29.      During the Application Period, KNA worked on researching information from Debtor's books and records regarding potential preferences transactions, for which KNA seeks allowance of $2,662.50 in fees.  The Trustee determined that the potential preference defendants had sufficient defenses to any liability for preference claims against them in this case, but could not have reached this conclusion without the investigative work of KNA.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 1.2 | $175.00 | $210.00 |
| Janice Seyedin | 22.5 | $109.00 | $2,452.50 |
| **TOTAL** | **23.7** | | **$2,662.50** |

## P.  REMAX ALTERNATIVE PAYMENT PROGRAM

30.      During the Application Period, KNA worked on accounts receivable related to the ReMax Alternative Payment Program ("RAPP") and "desk fees" owed by the Debtor's former agents, for which KNA seeks allowance of $11,242.13 in fees.  Overall, KNA assisted the Trustee in recovering over $85,000 in such receivables.

---

[17] Actual time spent was 18.9 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $515.02 to the Estate.

13

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 20.3 | $175.00 | $3,552.50 |
| Janice Seyedin | 45.8 | $109.00 | $4,992.20 |
| Cheryl Giddens | 0.525[18] | $109.00 | $57.23 |
| Natalie Scherbaum | 51.1 | $49.00 | $2,503.90 |
| Margaret Novak | 4.7 | $29.00 | $136.30 |
| **TOTAL** | **117.725** | | **$11,242.13** |

## Q.  REVIEW OF DEBTOR'S RECORDS

31.    During the Application Period, KNA analyzed the Debtor's records, including but

not limited to, paper files, computer files and storage retrieval of records, for which KNA seeks

allowance of $2,741.70 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 7.9 | $175.00 | $1,382.50 |
| Janice Seyedin | 7.8 | $109.00 | $850.20 |
| Natalie Scherbaum | 8.0 | $49.00 | $392.00 |
| Christopher Miller | 3.0 | $39.00 | $117.00 |
| **TOTAL** | **26.7** | | **$2,741.70** |

## R.  TAXES

32.    During the Application Period, KNA analyzed investigated and gathered data in

order to provide necessary information and documents to the Trustee's tax accountant regarding

various payroll tax returns, W-2's, and 1099-MISC form filings and other forms, for which KNA

seeks allowance of $8,000.55 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 18.8 | $175.00 | $3,290.00 |

---

[18] Actual time spent was 0.7 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $19.07 to the Estate

| | | | |
|---|---|---|---|
| Janice Seyedin | 38.3 | $109.00 | $4,174.70 |
| Cheryl Giddens | 1.05[19] | $109.00 | $114.45 |
| Natalie Scherbaum | 8.6 | $49.00 | $421.40 |
| **TOTAL** | **66.75** | | **$8,000.55** |

## S.  RESOLVE THREATS AGAINST KNA EMPLOYEE

33.    During the Application Period, KNA had to resolve issues related to physical threats to a KNA employee by a former agent of the Debtor, for which KNA seeks allowance of $1,468.00 in fees.

| | HOURS | RATE | TOTAL FEES INCURRED |
|---|---|---|---|
| **Name** | | | |
| Kenneth A. Novak | 4.2 | $175.00 | $735.00 |
| Janice Seyedin | 6.5 | $109.00 | $708.50 |
| Natalie Scherbaum | 0.5 | $49.00 | $24.50 |
| **TOTAL** | **11.2** | | **$1,468.00** |

## APPROPRIATENESS OF FEES

34.    The total amount of fees incurred totaled $229,039.44, however as an accommodation to the Estate KNA has reduced its fees by $27,313.26 and, therefore, is only seeking payment in the reduced amount of $201,726.18.

35.    The professional services provided by KNA to the Trustee during the Application Period were necessary and appropriate to assist the Trustee with the administration of the Debtor's case, and were in the best interests of the Estate. Compensation for the services provided by KNA is commensurate with the complexity, importance, and nature of the problems, issues and tasks involved.  KNA undertook all reasonable efforts to ensure that the services it provided were performed in an efficient manner, without duplication of effort.

---

[19] Actual time spent was 1.4 hours, however as an accommodation to the Estate KNA has agreed to reduce these fees by 25% which provided a savings of $38.15 to the Estate

36.     KNA's fees are recorded in a computerized time record system, from which the bills attached to this Application were generated. KNA has reviewed the bills to ensure their accuracy.

37.     KNA's billing rates for the matters set forth in this Application are consistent with reasonable and customary rates among collection agents and liquidation consultants for the work performed.

38.     KNA's requested fees and costs are awardable pursuant to Section 330 of the Bankruptcy Code as reasonable and necessary expenses incurred for the administration of the Estate.


## KNA EXPENSE POLICIES

39.     KNA charges clients for actual out-of-pockets expenses it incurs on their behalf such as travel, postage, copying costs, delivery costs, transportation of records costs, outside vendor costs, and court fees.

40.     The expenses sought by KNA in this Application relate to photocopying, hiring a locksmith, purchasing computer cables enabling Debtor's equipment to operate, packing and moving the Debtor's records, and sending packages via FedEx.  These expenses were necessary and benefited the Estate.  The total amount of out-of-pocket expenses for which KNA seeks reimbursement is $7,359.77.

## NOTICE

41.     Pursuant to Bankruptcy Rule 2002(a), notice of this Application has been given to: (a) the Debtor; (b) the Debtor's counsel; (c) the United States Trustee for the Northern District of Illinois; (d) all creditors; and (e) all other parties set up to receive notice through the

Court's ECF filing system.  In light of the nature of the relief requested, KNA submits that no

further notice is required.

WHEREFORE, KNA requests entry of an order allowing it an administrative claim in the

amount of $209,085.95, consisting of $201,726.18 in fees and $7,359.77 in expenses, and

allowing the Trustee to pay the same.


Dated: September 12, 2013                              Respectfully submitted,

                                                      **KEN NOVAK & ASSOCIATES, INC.**

                                                      By:    */s/ N. Neville Reid*
                                                             General Bankruptcy Counsel to N. Neville
                                                             Reid, the Chapter 7 Trustee

N. Neville Reid (ARDC #6195837)
Ryan T. Schultz (ARDC #6288585)
**FOX, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, IL  60606
Ph:  312.224.1200
Fx:  312.224.1201